A. Franklin Mahoney, J.
Each of the above-entitled motions for an order granting the right to inspect Grand Jury minutes of the Rensselaer County Supreme Court Grand Jury, or in the alternative, for an order dismissing the indictments, particularized by indictment number in the entitlements above, was brought on by show cause order at Special Term. In each matter the Rensselaer County Assistant District Attorney cross-moved to transfer the motions to the County Court of Rensselaer County to which the indictments had been previously moved by motion. After hearing oral arguments I granted, in each case, on the authority of Matter of Schneider v. Aulisi (307 N. Y. 376), the People’s cross motion to dismiss that branch of each motion seeking an order of dismissal of the indictments. That part of the cross motions seeking transfer of the matters to the Rensselaer County Court was denied. The Supreme Court has concurrent jurisdiction with the County Court with respect to motions to inspect Grand Jury minutes when the genesis of the indictments is a Supreme Court rather than a County Court Grand Jury. While the provident exercise of discretion would appear to compel that the motion to inspect should be made in the same court that will ultimately rule on the motions to dismiss, there are circumstances present here that persuade to the contrary. During July of 1969 the New York State Temporary Commission of Investigation conducted lengthy public hearings in Troy, New York inquiring into the conduct of certain public and quasi-public officials. The numerous volumes of transcript resulting therefrom were turned over to the Rensselaer County District Attorney, who in turn, went before the Grand Jury and obtained the subject indictments and others. Motions respecting other indictments have been made to the Rensselaer County Court and since I am a resident Justice of the County of Rensselaer I decided, in the exercise of my discretion, to retain jurisdiction over the remaining motions, in each case, to inspect the Grand Jury minutes.
The Massry Case
Initially, it is necessary to dispose of movant’s argument that he is entitled to inspection because the function of the New York State Temporary Commission of Investigation (SIC) was accusatorial rather than investigative since it was endowed by the Legislature (L. 1958, ch. 989, eff. May 1, 1958) with the duty *224 and power to co-operate with, advise and assist District Attorneys in the performance of their duties; to refer evidence of crime to the proper officers; to confer immunity; to subpoena witnesses, compel their attendance and to examine them under oath. As an accusatorial body, the argument goes, SIC was required by basic and fundamental constitutional concepts to afford Sixth and Fourteenth Amendment rights to Massry as a subpoenaed witness at the July, 1969 public hearings. He was, however, denied the effective use of counsel since he was not permitted to produce any witnesses on his behalf or allowed to confront those who testified against him by the device of cross-examination. Thus, SIC publicly extracted inculpatory, constitutionally tainted evidence which was referred to the District Attorney and which may be the genesis of the indictments returned against him. In support of this position the movant cites the case of Jenkins v. McKeithen (395 U. S. 411) wherein the United States Supreme Court held that a Louisiana statute creating the Louisiana Labor Management Commission of Inquiry violated the constitutional rights of persons it was investigating by failing to afford them the right of confrontation and other Bill of Rights guarantees. While it must be conceded there are many similarities between the Louisiana statute and the New York enactment creating and empowering SIC, it cannot be said that the Supreme Court ruling in Jenkins v. McKeithen (supra) compels the finding that the New York law is unconstitutional. In December of 1958 the Appellate Division, First Department, in Matter of Comm, of Investigation of State of N. Y. v. Lombardozzi (7 A D 2d 48) rejected an attack on the constitutionality of chapter 989 of the Laws of 1958, creating SIC. That court declared the commission to be temporary and that its function, powers and duties to be “ special purposes ” within the meaning of section 3 of article V of the State Constitution. This holding was affirmed by the Court of Appeals (5 N Y 2d 1026) without opinion and certiorari was denied (360 U. S. 930). It would be an oversimplification to hold that since McKeithen (supra) was later in time than Lombardozzi (supra) the Supreme Court would strike down as unconstitutional the New York law if again afforded an opportunity to review the legislation under attack herein. The dissimilarities between the two enactments together with the profound consideration that would have to be given to the legislative right to create special bodies within constitutionally approved State Departments to inquire into those aspects of both private and public conduct inimical to the interests of citizens, make such a cursory holding extremely hazardous. Further, since it is my view that a review of the con *225 stitutionality of the New York law creating SIC is unnecessary to a resolution of the motion for inspection of the Grand Jury minutes, I deliberately refrain from such a review. However, it is not unimportant to note, in the context of a motion to inspect Grand Jury minutes, that the record sought to be exposed to movant may have included testimony of Massry and others elicited under conditions abhorrent to our fundamental ideals of fairness and permitted only in those instances where the public need is so great that legislative limitation of constitutional guarantees is allowed.
Secrecy of Grand Jury minutes is not absolute. Section 952-t of the Code of Criminal Procedure provides that a copy of the minutes may be furnished to “ any * * * person * * * upon the written order of the court ”. Determination of whether disclosure should be permitted rests in the Trial Judge’s discretion (Matter of Quinn, 293 N. Y. 787). Before exercising its discretion the court must balance the competing interests of the one seeking disclosure and the People in opposition. In this connection, it is noted that Morris Massry is a businessman in Troy with expertise in buying, selling and managing real estate. He was examined by SIC in both private and public session concerning real property tax assessment reductions on realty assessed to corporate identities in which he had the sole or a significant interest. Members of the Board of Tax Review of the City of Troy were also examined by SIC in private and public session and the testimony of each witness received wide publication in the news media of the area. Certainly, it can be said that movant Massry has an interest in protecting his reputation as a businessman in the community, if review of the minutes should lead to grounds for dismissal, as well as in his freedom if he goes to trial under the indictments. Ranged against these personal considerations are the reasons for maintaining the confidentiality of Grand Jury minutes. As noted by Chief Judge Ftjld in People v. Di Napoli (28 N Y 2d 229, 235) the reasons most frequently mentioned by the courts and commentators for secrecy are: “ (1) prevention of flight by a defendant who is about to be indicted; (2) protection of the grand jurors from interference from those under investigation; (3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as the result of any indictment the grand jury returns; (4) protection of an innocent accused from unfounded accusations if in fact no indictment is returned; and (5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to tes *226 tify freely.” Clearly, none of the above five most frequently used reasons for secrecy have application herein. The movantdefendant is not about to escape and the identity of all those who could have testified before the Grand Jury with respect to tax assessment reductions is publicly known for each testified at the public hearings conducted by SIC in Troy during the summer of 1969.
Equally as germane in the delicate task of balancing equities is the Report of the Grand Jury (issued pursuant to section 253-a of the code) that indicted the movant. In pertinent part, that body under a heading of ‘ ‘ Findings of Fact ’ ’ reported:
“ The hearings conducted in Troy, New York, during July of 1969, were held in compliance and in accord with the law which set -up and continued the New York State Temporary Commission of Investigation. However, the law does not mandate that these hearings comply with the same rules of evidence that must be met in a court of law. During the course of these hearings witnesses were allowed to place into the record their opinions as to what may or may not have been done by various other individuals mentioned in the course of their testimony. They were further allowed to express themselves in terms of guess work and conjecture. This left the impression that many individuals were the subject of bribes, pay-offs and manipulations. These hypotheses were not thereafter sustainable by legally acceptable testimony or evidence.
‘ ‘ Allowing such testimony, which is the subject of coverage by the news media, results in a dis-service to a community when its citizens are not trained to and cannot differentiate between accusations and legally admissible evidence.”
Clearly, if the Grand Jury which indicted movant felt compelled to issue a report condemning the manner in which SIC conducted its hearings and eloquently attacking the quality of the testimony adduced at such hearings, it reasonably follows that the testimony relating to Massry might have been of such minimal quality as not to meet the standards required by sections 249 and 251 of the Code of Criminal Procedure. Section 249 mandates the receipt of nothing but legal evidence and section 251 requires such evidence to lead to a conviction if left unexplained or uncontradicted. The comments of the Grand Jury at the very least cast doubt upon the admissibility of the SIC elicited evidence and raise the issue of whether such proof might not be successfully explained or contradicted at trial. .
When all of the above is considered in juxtaposition to the undenied fact that movant was continuously represented by counsel at both the private and public hearings and that fact was *227 known to the District Attorney who, nevertheless, subpoenaed Massry and had him sign a waiver of immunity without consulting Massry’s known attorney despite the warnings in People v. Waters (27 N Y 2d 553, 556) it becomes clear that the equities of interest clearly preponderate in favor of movant Massry.
The motion to inspect the Grand Jury minutes is granted and the Supreme Court Grand Jury stenographer is directed to furnish a copy of the Grand Jury minutes respecting indictments 0-3837(1970) and 0-3838(1970) to the retained attorney of movant-defendant Massry.
The Mitchell Case
The Mitchell case is exactly the same as the Massry matter except (1) Mitchell was indicted for the crime of bribery in violation of section 200.00 of the Penal Law and (2) he did not testify before the Grand Jury.
As appears more fully in my discussion of the Massry case above I refrained from deciding the issue of the constitutionality of the law generic to the powers of the New York State Temporary Commission of Investigation, while raising the caveat that proof adduced under such legal restraints must be carefully evaluated to determine if it is of a quality sufficient to sustain a conviction if uncontradicted or unexplained. I also referred to the Grand Jury report to underscore the low opinion that body had of the proof adduced at the public hearings conducted by SIC.
For these reasons, it is my view, in the Mitchell case, that the evidence presented to the Grand Jury may not have been of a quality sufficient to convict and, further, that the balancing of equities compels the conclusion that disclosure is in the interest of justice.
The motion to inspect the Grand Jury minutes is granted and the Supreme Court Grand Jury stenographer is directed to furnish a copy of the Grand Jury minutes respecting indictments 0-3835(1970) and 0-3836(1970) to the retained attorney of movant-defendant Mitchell.